**Michael FREED, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 79A02–1010–CR–1187.**

Court of Appeals of Indiana.

Oct. 3, 2011.

Daniel J. Moore, Laszynski & Moore, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ryan Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Michael Freed appeals his conviction for Class B felony robbery. Freed argues that the trial court erred by admitting evidence of his uncharged misconduct—specifically, an unrelated burglary, for-

gery, and solicitation for murder. We conclude that the evidence was properly admitted for the non-character purpose of corroborating Freed's confession to the instant robbery. We further conclude that the record evidence is sufficient to sustain Freed's conviction. We affirm.

### Facts and Procedural History

On July 6, 2008, at approximately 2:30 a.m., Freed entered a Village Pantry convenience store in Lafayette. The store was located near the intersection of Brady Lane and Concord Avenue. Freed wore a glove on his left hand, a hat on his head, and another article covering the bottom of his face. Employee Cora Taegel was working alone at the store. Freed brandished a knife and demanded that Taegel give him the money from the register. Taegel gave Freed $115 from the drawer. Freed fled. Taegel suffered a panic attack but called 911 right away. Freed headed north to his friend's apartment, which was in a complex adjacent to the convenience store. He shed his disguise while en route.

Law enforcement responded. Officers located a hat and other clothing items in the vicinity of the Village Pantry, but Freed eluded police for the time being.

The robbery was caught on a surveillance tape. The tape apparently did not capture Freed's face, though it did record his voice.

Freed was later arrested and jailed in connection with an unrelated burglary/forgery. Freed and an accomplice allegedly broke into the residence of Alice and Menlo Pridemore and stole a purse containing a checkbook. Freed and his accomplice then went to a bank to cash forged checks.

While in jail for the latter offenses, Freed was concerned that the Pridemores would testify against him at trial. Freed devised a plan to murder them, and he sought assistance from fellow inmate James Scott Littrell. Littrell played along but intended to report Freed to authorities. Littrell falsely told Freed that he knew someone who could perform a murder-for-hire. Littrell asked Freed to put his murder request into writing.

Freed wrote a letter to Littrell's made-up hit man. The letter stated in part:

> I have a case with these people as witness's and I hear your the man to talk to about taking care of problems for good. So my case will be clean at trial. Im in a bind because Im in jail. . . . If you help me, Ill make sure you get your money when I get out. Just give me a few days unless Scott can loan me the money right now. I really need your help. . . . I will do anything to make this problem disappear.

State's Ex. 16. Freed attached a hand-drawn map of the Pridemores' home. At the end of the letter, Freed wrote: "Check for an unsolved VP robbery in July of 08 at Concord and brady In." *Id.* This statement was the equivalent of a confession to the Village Pantry robbery. The confession functioned as "insurance" or "collateral" for Littrell's assistance in the murder plot. In other words, if Freed were to tell on Littrell, Littrell would have Freed's robbery confession to disclose to law enforcement.

Littrell turned Freed's letter over to authorities, and Detective Daniel Shumaker soon met with Freed to question him about the Village Pantry robbery. Freed denied involvement, though he made various incriminating statements to Detective Shumaker during their interview. For example, Freed indicated that the store clerk was a female. Freed also asked Detective Shumaker how he learned of the robbery, Detective Shumaker said that he found out from Freed's own mouth, and Freed then asked if Littrell was still in jail. Following

the interview, Detective Shumaker obtained from Freed a DNA sample and handwriting exemplar.

Freed was later housed with inmate James Goodman. Freed told Goodman about the Village Pantry robbery and shared details about the crime. Freed said that he robbed a female clerk, wore a disguise and glove, used a knife, stole about $125, and fled to his friend's apartment. He also discussed with Goodman the letter that he wrote soliciting a hit man and confessing to the robbery. Goodman passed this information on to Detective Shumaker.

Forensic technician Daun Powers analyzed DNA swabs collected from the hat recovered near the Village Pantry. Powers could not exclude Freed as a contributor to a particular DNA sample taken from inside the hat. Or statistically speaking, about five people within the Tippecanoe County population could have contributed to the DNA sample, and Freed's DNA profile identified him as one of them.

Handwriting expert Courtney King analyzed Freed's jailhouse letter. King concluded that Freed was the probable author of the first part of the letter, in which Freed requested assistance from the supposed hit man. King was less certain about the confession, as it looked slightly different and was likely written on a different backing surface. However, according to King, indications were that Freed authored the confession as well.

Detective Shumaker reviewed the Village Pantry surveillance tape after interviewing Freed. Detective Shumaker identified Freed as the robber by matching Freed's voice with the voice recorded on the tape.

The State charged Freed with Class B felony robbery and the lesser-included Class D felony theft. The State alleged that "[o]n or about July 6, 2008, in Tippecanoe County, State of Indiana, Michael G. Freed did knowingly or intentionally take property, to wit: U.S. Currency, from another person or from the presence of another person, to wit: Cora Taegel, by using or threatening the use of force on the said Cora Taegel, or by putting the said Cora Taegel in fear, and Freed committed said offense while armed with a deadly weapon, to wit: a knife...." Appellant's App. p. 10.

The State filed notice of intent to offer at trial Freed's jailhouse letter. The State sought to introduce the letter "as probative evidence of intent, knowledge, and identity. The letter conveys the defendant's involvement in the robbery at issue in this case," and his "request for certain witnesses to be killed identifies the defendant as the letter and map's author." *Id.* at 17. The trial court granted the State's request following a hearing and over the defense's motion to exclude. The court explained:

> I have tremendous difficulty separating ... the sort of a fragment of a confession of this crime contained in writing from the entire context.... All it says is check for an unsolved crime. Who knows why a person might make that request. It only takes its meaning from the representation that it was offered as a token of good faith in order to persuade the cellmate to help him take care of the other issue.... It initially lacks credibility and so the context is necessary to explain why it's credible that a person would make this confession. The confession is highly relevant, if he made the confession, and, of course, you have ... problem the State always has in a case ... with the credibility of the cellmate and then that's a hurdle that it is hard to get past, but at the very least what we have here is a confirmation that those conversations in which a more

complete confession were made actually took place. And, so, I do find that the probative value outweighs the prejudice. I also find that the State is not intending to present this evidence of character of the defendant.

Tr. p. 25–26.

The State called Taegel, Littrell, Goodman, King, Powers, Detective Shumaker, and several other investigating officers to testify to the foregoing events. The State introduced Freed's letter into evidence over objection.

The defense challenged Littrell and Goodman's credibility on the stand, eliciting their criminal records for purposes of impeachment. The defense also argued in closing that their testimony was "garbage" and should be disregarded by the jury. *Id.* at 300.

At least twice at trial, when the jailhouse letter, Pridemore burglary, and/or murder solicitation were being discussed, the court instructed the jury that

> evidence of other crimes or wrongs or acts is not admissible to prove the character of a person in order to show action and conformity therewith. It may however be admissible for other purposes such as proof of intent, knowledge, or identity. Defendant's statements are admitted only for the purpose of proving intent, knowledge or identity as to the crimes on trial and are not to be considered by you for any other purpose. The circumstances under which the statements were made may only be considered in determining the ... reliability of the statement and not as independent evidence that the defendant committed the crimes on trial.

*Id.* at 126, 149. The record indicates that a similar admonishment was included in the court's final instructions. *See id.* at 281–83.

Freed was convicted as charged. The trial court entered judgment of conviction only for Class B felony robbery. Freed appeals.

## Discussion and Decision

Freed raises two issues: (I) whether the trial court erred by admitting evidence of his unrelated burglary, forgery, and solicitation for murder, and (II) whether the evidence is sufficient to sustain his conviction for robbery.

### I. Uncharged Misconduct Evidence

Freed first argues that the trial court erred by admitting evidence of his uncharged misconduct—specifically, his unrelated burglary, robbery, and murder solicitation.

■ Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Rule 404(b) is designed to prevent the jury from assessing a defendant's present guilt on the basis of his propensities—the so-called "forbidden inference." *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind.1997). Prior misconduct may be admissible to prove motive, intent, or other material facts at issue in a case. *Id.* Rule 404(b)'s list of permissible purposes is illustrative but not exhaustive. *Id.*

■ In assessing the admissibility of 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Wilson v.*

*State*, 765 N.E.2d 1265, 1270 (Ind.2002). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The trial court is afforded wide latitude in weighing probative value against prejudice under Rule 403. *Willingham v. State*, 794 N.E.2d 1110, 1116 (Ind.Ct.App.2003). We will reverse the court's evaluation and decision to admit or exclude only upon a showing of an abuse of discretion. *Scalissi v. State*, 759 N.E.2d 618, 622 (Ind.2001).

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly. Ind. Evidence Rule 105.

As one noted evidence scholar explains:

Suppose [ ] that at trial, the reliability of the confession becomes an issue. Assume further that the original confession refers to uncharged misconduct. In this situation, there is some authority that the prosecution may introduce evidence of uncharged misconduct to corroborate the confession in the jurors['] eyes. In this setting, the issue is the weight to be given the confession rather than its admissibility.... When the reliability of the confession becomes the focal point of the trial on the merits, the prosecution has a special need to demonstrate its trustworthiness.

1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 6:6 (2005) (citations omitted); *see also United States v. Blake*, 941 F.2d 334, 338 (5th Cir.1991) ("When Blake denied making the incriminating statements to the police officers on direct, he called into question the veracity of the officers' testimony about the confession. The government was entitled to present evidence about Blake's prior involvement with drugs to corroborate the testimony about Blake's confession."), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

■■ Here we conclude that the trial court did not err by admitting reference to Freed's unrelated burglary, forgery, and solicitation for murder. First, Freed's uncharged misconduct was relevant for a purpose other than suggesting propensity to commit the offenses charged. The burglary, forgery, and murder solicitation contextualized Freed's jailhouse letter and made more probable that the confession to the Village Pantry robbery was authored by him. These were legitimate theories of independent relevance justifying introduction of the evidence under the second sentence of Rule 404(b). The remaining question is whether the evidence's danger of unfair prejudice so substantially outweighed its probative value as to require exclusion under Rule 403. We acknowledge that the potential for prejudice was tangible here, given the nature of the uncharged misconduct. Freed's other wrongs consisted not only of a burglary and forgery but also of a plot to murder potential witnesses in the burglary/forgery prosecution. Having said that, we believe that the probative value and need for the evidence in this case was appreciable. The State's case against Freed rested largely on his confessions, both within the letter and made orally to inmates Littrell and Goodman. Freed attacked Littrell's and Goodman's credibility at trial, eliciting their criminal histories, portraying them as liars, and instructing the jury to disregard their testimony as "garbage." The State's handwriting expert could not state with unequivocal certainty that the confession portion of the letter was written by Freed. Moreover, the State's remaining evidence

linking Freed to the robbery—while not insignificant—was alone somewhat tenuous. The State thus had a genuine need for Freed's written confession and a corresponding need to contextualize it and demonstrate its authenticity for the jury. There was also no practical way to redact from the letter reference to Freed's uncharged misconduct, as any such redaction would reduce the final line to an isolated, unexplained statement which would not be properly understood as a confession. We finally note that the trial court was conscientious in admonishing the jury that Freed's uncharged misconduct was not admitted to demonstrate character or prove action in conformity therewith. The court instructed specifically that "[t]he circumstances under which the statements were made may only be considered in determining the . . . reliability of the statement and not as independent evidence that the defendant committed the crimes on trial." For all these reasons, we cannot say that the trial court abused its discretion under Rule 403 in admitting the misconduct evidence at issue.

## II. Sufficiency of the Evidence

Freed next argues that there is insufficient evidence to sustain his Class B felony robbery conviction.

■■■ Our standard of review with regard to sufficiency claims is well-settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind.Ct.App.2010), *reh'g denied, trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *Id.* Reversal is appropriate only when reason-

able persons would not be able to form inferences as to each material element of the offense. *Id.*

A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery. Ind.Code § 35–42–5–1. The offense is a Class B felony if, among other things, it is committed while armed with a deadly weapon. *Id.*

■■■ Here we find sufficient evidence to sustain Freed's conviction. First, there is no dispute that a robbery occurred and that the perpetrator was armed with a deadly weapon. The only issue is whether the State produced sufficient evidence that Freed was in fact the perpetrator. Littrell and Goodman testified to Freed's oral confessions and his revelation of specific details about the robbery. Freed's letter contained the equivalent of a written confession to the crime. Freed made additional incriminating statements to Detective Shumaker during his interview. DNA analysis could not exclude Freed as a contributor to DNA swabbed from inside the discarded hat. And Detective Shumaker identified Freed's voice as the voice of the robber recorded on the surveillance video. A trier of fact could reasonably conclude from the foregoing evidence that Freed committed the offense charged. Freed argues that the State's case was predicated on the testimony of Goodman and Littrell and that "neither Goodman and Littrell nor their testimony has enough credibility to carry a conviction on this charge beyond a reasonable doubt." Appellant's Br. p. 14. Freed's claim amounts to no more than an invitation to reweigh the evidence, something which this Court is not at liberty to do.

We affirm the trial court's judgment of conviction.

Affirmed.

FRIEDLANDER, J., and DARDEN, J. concur.