**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 21 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER D. RICHARDSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1109-CR-501 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1009-FC-97

**May 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Christopher D. Richardson appeals his convictions for Class B felony aggravated battery and Class C felony battery for shooting his friend in the leg. Richardson contends that his constitutional right of confrontation was violated when the trial court allowed testimony about statements made by non-testifying witnesses who identified Richardson as the shooter. Richardson also argues that the trial court erred by allowing the State to disclose the exchange that occurred between Richardson and the victim just hours before the shooting. Finally, Richardson claims that his convictions violate Indiana's Double Jeopardy Clause. We affirm in part and reverse in part.

**Facts and Procedural History**

On the afternoon of August 20, 2010, Simmuel Mobley was sitting in the yard of his Gary home, socializing with his neighbors, including Richardson, his friend of nearly one year. At some point during the afternoon, Richardson began arguing with his underage girlfriend in Mobley's yard. Mobley told Richardson to "take that s*** down the street" and ordered Richardson off his property. Tr. p. 285. That evening, Mobley was talking to people outside Richardson's apartment building when someone told Mobley that Richardson was looking for him. When Mobley approached Richardson, who was standing near his vehicle, Richardson turned and shot him in the leg, shattering his femur. Richardson told Mobley, "You ain't going to talk to me like you talked [sic] to other people." *Id.* at 289. Two women were walking nearby at the time. One of the women, Quanilla Strong, saw a man shooting another man and overheard a third man say, "Chris, you didn't have to shoot him, man, why did you shoot him?" *Id.* at 58.

2

Detectives Art Azcona and Cheryl Stanley of the Gary Police Department investigated the shooting. During the course of the investigation, Detective Azcona spoke to a man named Lazarus Holden, who said that a man named Chris shot Mobley. Richardson was arrested on September 15, 2010. Meanwhile, Mobley was recovering from a series of surgeries to repair the damage to his leg. When Detective Azcona spoke with Mobley at the hospital after Richardson's arrest, Mobley identified Richardson as the man who shot him.

The State charged Richardson with the following counts: (I) Class B felony aggravated battery; (II) Class C felony battery by means of a deadly weapon; and (III) Class C felony battery resulting in serious bodily injury. Before trial, Richardson sought to limit testimony that Mobley ordered Richardson off his property just hours before the shooting because he was arguing with his fourteen-year-old girlfriend. Richardson's counsel argued that allowing the jury to hear that forty-one-year-old Richardson was dating a fourteen-year-old girl would be extremely prejudicial and would cause the jury to believe that Richardson was a child molester or a pedophile. The State responded that the testimony supported its theory of the case, particularly, Richardson's motive for shooting Mobley:

> [Mobley] made comments to [Richardson] regarding his relationship with this girl and did it in front of other people and that it basically was a wounded pride situation and because of the nature of what [Mobley] said about [Richardson] and this girl in [Mobley's] front yard, later in the day [Richardson] shoots [Mobley] in a parking lot.

*Id.* at 17. The trial court allowed the evidence, ruling that its probative value outweighed the prejudicial impact, and noted that "[Richardson's] obviously not on trial for any type of involvement with an underage person." *Id.* at 19.

At trial, Richardson objected to testimony from Detective Azcona that Lazarus Holden had given a statement that a man named Chris shot Mobley. *Id.* at 188. Richardson argued that Holden's statements were hearsay because Holden had given a statement but had refused to be deposed before trial. The State argued that testimony was needed to establish the progression in Detective Azcona's investigation, and it assured the trial court that it would not elicit the actual statement made by Holden. The court overruled Richardson's objection and allowed the State to elicit the following testimony:

> THE STATE: You took a statement from an individual named Lazarus Holden?
>
> DET. AZCONA: Yes, I did.
>
> THE STATE: After speaking with him, did you pursue other leads or speak to other individuals?
>
> DET. AZCONA: Yes. Later in the course of the investigation.

*Id.* at 195. After Detective Azcona described the next steps in the investigation, the State returned to the subject of Richardson's involvement:

> THE STATE: When you went to the hospital [to speak to Mobley], had you received at that point, though your investigation, the name Chris Richardson, had it come up?
>
> DET. AZCONA: Yes, I [sic] did.

*Id.* at 197. On cross-examination, in response to a series of questions from Richardson's counsel regarding Detective Azonca's conversation with Mobley at the hospital,

4

Detective Azcona stated specifically that Holden provided Richardson's name in a statement and an anonymous person named Richardson as the shooter in a call to the police station. *Id.* at 241.

The jury also heard testimony from Detective Stanley, Quanilla Strong, and the other woman walking nearby when the shooting occurred. Mobley testified and stated that Richardson was the man who shot him. The jury found Richardson guilty on all counts. The trial court entered judgment on Counts I and II only and sentenced Richardson to twenty years on Count I and eight years on Count II, to be served concurrently. Richardson now appeals.

## Discussion and Decision

Richardson raises three issues on appeal. First, he contends that his constitutional right of confrontation was violated when the trial court allowed testimony about statements made by non-testifying witnesses who identified Richardson as the shooter. He next argues that the trial court erred by permitting the State to disclose his exchange with Mobley just hours before the shooting. Finally, he claims that two of his convictions violate Indiana's Double Jeopardy Clause.

## I. Confrontation

Richardson contends that his right of confrontation under Article 1, § 13 of the Indiana Constitution and the Sixth Amendment to the United States Constitution was violated when the trial court allowed testimony about statements made by non-testifying witnesses—Lazarus Holden and another anonymous source—who identified him as the shooter. Specifically, Richardson argues that because Holden did not testify, the

introduction of his statement through Detective Azcona constitutes hearsay and violates the state and federal Confrontation Clauses because he did not have an opportunity to cross-examine him. The State responds that the introduction of Holden's statement through Detective Azcona is not hearsay and does not implicate the Confrontation Clauses because Richardson's counsel elicited the testimony, and further, any error in the admission of the statement constitutes harmless error in light of the other evidence establishing Richardson's guilt. We agree.[1]

A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. *See* Ind. Evidence Rule 802. However, "otherwise inadmissible evidence may become admissible where the defendant 'opens the door' to questioning on that evidence." *Jackson v. State*, 728 N.E.2d 147, 152 (Ind.

---

[1] The State also argues that this claim is waived because Richardson objected only on evidentiary grounds at trial. We have previously held that an evidentiary objection based only on the rules of evidence is not sufficient to preserve a claim premised on the Sixth Amendment. *See Perry v. State*, 956 N.E.2d 41, 51 (Ind. Ct. App. 2011). However, because we prefer to decide cases on their merits, we address this claim as raised on appeal.

2000). Nonetheless, "the Confrontation Clause of the Sixth Amendment to the Federal Constitution prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person." *Fowler v. State*, 829 N.E.2d 459, 463 (Ind. 2005). The Sixth Amendment to the United States Constitution states, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. Article 1, § 13 of the Indiana Constitution also provides a criminal defendant the right of confrontation: "[i]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face[.]"

To the extent Richardson objects to Detective Azcona's statement that Holden and an anonymous caller named him as the shooter, Tr. p. 241, Richardson invited this error on cross-examination. Moreover, we need not determine whether Richardson's right of confrontation was violated when the trial court permitted Detective Azcona to testify that he took a statement from Holden and that Richardson's name came up at some point in the investigation, because even assuming that it was, it was harmless error. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt such that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Hape v. State*, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), *trans. denied.* Here, Mobley, who had been friends with Richardson for nearly one year, testified that Richardson was the man who shot him in the leg and that as he shot him, Richardson said, "You ain't going to talk to me like you

7

talked [sic] to other people." Tr. p. 289. A witness, Quanilla Strong, also testified that just after the shooting, she heard a man say, "Chris, you didn't have to shoot him, man, why did you shoot him?" *Id.* at 58.[2] This is sufficient evidence to render the admission of testimony regarding non-testifying witnesses harmless.

## II. Evidence of Motive

Richardson next argues that the trial court erred when it allowed Mobley to testify that he ordered Richardson off his property just hours before the shooting. Richardson argues that this evidence was not relevant, and even if it was, its probative value was substantially outweighed by its prejudicial effect. Specifically, Richardson argues that by permitting Mobley to testify that he ordered Richardson off his property for arguing with his underage girlfriend, the jury would believe that Richardson was a child molester or pedophile.

Again, a trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough*, 911 N.E.2d at 631. The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Richardson argues that the evidence was inadmissible under 404(b). We disagree.

---

[2] Richardson made a hearsay objection to this testimony at trial, but his objection was overruled. *See* Tr. p. 58. Richardson does not challenge the admission of Strong's testimony on appeal.

Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Evidence Rule 404(b) tracks Federal Rule of Evidence 404(b) almost verbatim. *See Hicks v. State*, 690 N.E.2d 215, 218 & n.1 (Ind. 1997) (noting that the federal rule also includes "opportunity" in its short list of permissible purposes). The rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of his propensities—the so-called "forbidden inference." *Id.* at 218-19. Prior acts may be admissible to prove motive, intent, or other material facts at issue in a case. *Id.* Rule 404(b)'s list of permissible purposes is illustrative but not exhaustive. *Id.*

Here, Richardson argued with his underage girlfriend in Moberly's yard, and Mobley intervened, cursing at Richardson and ordering him off his property in front of many other people just hours before the shooting. This exchange between the men goes directly to their contentious relationship on that day and specifically, to Richardson's motive for shooting Mobley that evening. Thus, this evidence was admissible under Indiana Evidence Rule 404(b), and the trial court properly admitted it.

Although evidence may be relevant, it may still be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice pursuant to Evidence Rule 403. The trial court is afforded wide latitude in weighing probative value against prejudice under Rule 403. *Freed v. State*, 954 N.E.2d 526, 531 (Ind. Ct. App. 2011). We

will reverse the court's evaluation and decision to admit or exclude only upon a showing of an abuse of discretion. *Id.*

We cannot say that the trial court abused its discretion when it permitted Mobley to testify that he cursed at Richardson and ordered him off his property. This incident occurred just hours before the shooting, involved the same two individuals, and established Richardson's motive. The probative value of this evidence is therefore high. By contrast, the prejudicial impact is low. Contrary to Richardson's claim, the fact that Mobley testified that Richardson had an underage girlfriend did not equate to "allowing the jury to hear that Richardson was a child molester and pedophile . . . ." Appellant's Br. p. 18. Moberly did not testify that Richardson and the underage girl were having sex or otherwise imply that Richardson was a child molester. Further, we note that evidence is often prejudicial, but "exclusion under Rule 403 is an extraordinary tool to be used but sparingly." *See* 12 Robert Lowell Miller, Jr., *Indiana Practice: Indiana Evidence* § 403.102, p. 350 (3d ed. 2007). We cannot say that the trial court erred by admitting evidence of Richardson and Mobley's exchange in Mobley's front yard.

### III. Double Jeopardy

Finally, Richardson argues, and the State concedes, that his convictions for aggravated battery and battery violate Indiana's Double Jeopardy Clause.[3] Specifically, he claims that both convictions on Count I and Count II are based upon the same act of Richardson shooting Mobley. We agree. To convict Richardson of aggravated battery

---

[3] Although the State argues that Richardson waived his double jeopardy claim by seeking concurrent sentences on Counts I and II at sentencing, rather than making a double jeopardy argument, the State nonetheless asks that "this Court vacate Defendant's conviction on Count II." Appellee's Br. p. 19.

on Count I, the State was required to prove that he knowingly or intentionally inflicted injury on Mobley that created a substantial risk of death. Ind. Code § 35-42-2-1.5. To convict Richardson of battery on Count II, the State was required to prove that he knowingly or intentionally touched Richardson in a rude, insolent, or angry manner while armed with a deadly weapon. Ind. Code § 35-42-2-1(a)(3).

In support of both of these crimes, the State argued that Richardson shot Mobley with a gun; thus, the infliction of injury causing a substantial risk of death was the very same act that constituted the rude, angry, or insolent touching by shooting Mobley. We have previously held this to be a double jeopardy violation. *See Oeth v. State*, 775 N.E.2d 696, 704 (Ind. Ct. App. 2002) (vacating battery conviction when conviction for aggravated battery was based on same evidence, noting the prohibition against "conviction and punishment for a crime that consists of the very same act as another crime for which the defendant has been convicted and punished") (citations omitted), *reh'g denied*, *trans. denied*. We therefore vacate Richardson's conviction on Count II for Class C felony battery.

Affirmed in part and reversed in part.

CRONE, J., and BRADFORD, J., concur.

11