## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kevin R. Hewlate
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Freed,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | December 22, 2015<br><br>Court of Appeals Case No.<br>79A02-1506-PC-599<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Steven P. Meyer,<br>Judge<br><br>Trial Court Cause No.<br>79D02-1201-PC-1 |

**Bradford, Judge.**

## Case Summary

In 2010, Appellant-Petitioner Michael Freed was convicted of Class B felony robbery. Freed's conviction was affirmed on direct appeal. Freed filed a petition for post-conviction relief ("PCR") in January of 2012. On May 19, 2015, the post-conviction court issued an order denying Freed's petition. Freed then appealed, arguing that the post-conviction court erroneously determined that he did not suffer ineffective assistance of appellate counsel. We affirm.

## Facts and Procedural History

Our opinion in Freed's prior direct appeal, which was handed down on October 3, 2011, instructs us as to the underlying facts and procedural history leading to this post-conviction appeal:

> On July 6, 2008, at approximately 2:30 a.m., Freed entered a Village Pantry convenience store in Lafayette. The store was located near the intersection of Brady Lane and Concord Avenue. Freed wore a glove on his left hand, a hat on his head, and another article covering the bottom of his face. Employee Cora Taegel was working alone at the store. Freed brandished a knife and demanded that Taegel give him the money from the register. Taegel gave Freed $115 from the drawer. Freed fled. Taegel suffered a panic attack but called 911 right away. Freed headed north to his friend's apartment, which was in a complex adjacent to the convenience store. He shed his disguise while en route.
>
> Law enforcement responded. Officers located a hat and other clothing items in the vicinity of the Village Pantry, but Freed eluded police for the time being.
>
> The robbery was caught on a surveillance tape. The tape

apparently did not capture Freed's face, though it did record his voice.

Freed was later arrested and jailed in connection with an unrelated burglary/forgery. Freed and an accomplice allegedly broke into the residence of Alice and Menlo Pridemore and stole a purse containing a checkbook. Freed and his accomplice then went to a bank to cash forged checks.

While in jail for the latter offenses, Freed was concerned that the Pridemores would testify against him at trial. Freed devised a plan to murder them, and he sought assistance from fellow inmate James Scott Littrell. Littrell played along but intended to report Freed to authorities. Littrell falsely told Freed that he knew someone who could perform a murder-for-hire. Littrell asked Freed to put his murder request into writing.

Freed wrote a letter to Littrell's made-up hit man. The letter stated in part:

> I have a case with these people as witness's and I hear your the man to talk to about taking care of problems for good. So my case will be clean at trial. Im in a bind because Im in jail.... If you help me, Ill make sure you get your money when I get out. Just give me a few days unless Scott can loan me the money right now. I really need your help.... I will do anything to make this problem disappear.

State's Ex. 16. Freed attached a hand-drawn map of the Pridemores' home. At the end of the letter, Freed wrote: "Check for an unsolved VP robbery in July of 08 at Concord and brady In." *Id*. This statement was the equivalent of a confession to the Village Pantry robbery. The confession functioned as "insurance" or "collateral" for Littrell's assistance in the murder plot. In other words, if Freed were to tell on Littrell, Littrell would have Freed's robbery confession to disclose to law

enforcement.

Littrell turned Freed's letter over to authorities, and Detective Daniel Shumaker soon met with Freed to question him about the Village Pantry robbery. Freed denied involvement, though he made various incriminating statements to Detective Shumaker during their interview. For example, Freed indicated that the store clerk was a female. Freed also asked Detective Shumaker how he learned of the robbery, Detective Shumaker said that he found out from Freed's own mouth, and Freed then asked if Littrell was still in jail. Following the interview, Detective Shumaker obtained from Freed a DNA sample and handwriting exemplar.

Freed was later housed with inmate James Goodman. Freed told Goodman about the Village Pantry robbery and shared details about the crime. Freed said that he robbed a female clerk, wore a disguise and glove, used a knife, stole about $125, and fled to his friend's apartment. He also discussed with Goodman the letter that he wrote soliciting a hit man and confessing to the robbery. Goodman passed this information on to Detective Shumaker.

Forensic technician Daun Powers analyzed DNA swabs collected from the hat recovered near the Village Pantry. Powers could not exclude Freed as a contributor to a particular DNA sample taken from inside the hat. Or statistically speaking, about five people within the Tippecanoe County population could have contributed to the DNA sample, and Freed's DNA profile identified him as one of them.

Handwriting expert Courtney King analyzed Freed's jailhouse letter. King concluded that Freed was the probable author of the first part of the letter, in which Freed requested assistance from the supposed hit man. King was less certain about the confession, as it looked slightly different and was likely written on a different backing surface. However, according to King, indications were that Freed authored the confession as well.

Detective Shumaker reviewed the Village Pantry surveillance tape after interviewing Freed. Detective Shumaker identified Freed as the robber by matching Freed's voice with the voice recorded on the tape.

[Appellee-Respondent the State of Indiana (the "State")] charged Freed with Class B felony robbery and the lesser-included Class D felony theft. The State alleged that "[o]n or about July 6, 2008, in Tippecanoe County, State of Indiana, Michael G. Freed did knowingly or intentionally take property, to wit: U.S. Currency, from another person or from the presence of another person, to wit: Cora Taegel, by using or threatening the use of force on the said Cora Taegel, or by putting the said Cora Taegel in fear, and Freed committed said offense while armed with a deadly weapon, to wit: a knife...." Appellant's App. p. 10.[1]

**** 

The State called Taegel, Littrell, Goodman, King, Powers, Detective Shumaker, and several other investigating officers to testify to the foregoing events. The State introduced Freed's letter into evidence over objection.

The defense challenged Littrell and Goodman's credibility on the stand, eliciting their criminal records for purposes of impeachment. The defense also argued in closing that their testimony was "garbage" and should be disregarded by the jury. *Id.* at 300.

At least twice at trial, when the jailhouse letter, Pridemore burglary, and/or murder solicitation were being discussed, the court instructed the jury that

---

[1] For the purposes of this memorandum decision, references to "Appellant's App." refer to the appendix submitted in the Appellant's direct appeal. Any reference to the appendix submitted by the Appellant in the instant PCR proceedings will be referred to as "Appellant's PCR App."

evidence of other crimes or wrongs or acts is not admissible to prove the character of a person in order to show action and conformity therewith. It may however be admissible for other purposes such as proof of intent, knowledge, or identity. Defendant's statements are admitted only for the purpose of proving intent, knowledge or identity as to the crimes on trial and are not to be considered by you for any other purpose. The circumstances under which the statements were made may only be considered in determining the ... reliability of the statement and not as independent evidence that the defendant committed the crimes on trial.

*Id*. at 126, 149. The record indicates that a similar admonishment was included in the court's final instructions. *See id*. at 281-83.

*Freed v. State*, 954 N.E.2d 526, 528-30 (Ind. Ct. App. 2011) (brackets added).

[3] Within an hour of being sent to deliberate, the jury submitted the following question to the trial court: "As stated in closing argument for the Prosecutor or by the Prosecutor, is it a fact of law that voice recognition is sufficient testimony for a conviction?" Trial Tr. p. 314. Upon receiving the question, the trial court summonsed the parties to discuss the jury's question and the court's proposed answer. The trial court informed counsel that its research had "come up with four cases that indicate that the answer to that question would be yes." Trial Tr. p. 314. The trial court indicated that it felt it appropriate to clarify for the jury and recommended either: (1) to bring the jury back into the courtroom and allow counsel the opportunity to discuss the relevant case law before the jury or

(2) to send the jury's note back with the indication that "it is an accurate statement of the law." Trial Tr. p. 315.

[4] Counsel for both Freed and the State indicated that they did not feel additional argument was necessary. Freed's counsel suggested referring the jury back to the final jury instructions without answering the jury's question. Counsel for the State indicated that he believed that it was appropriate for the trial court to respond to the jury's question.

[5] In determining how to deal with the jury's question, the trial court engaged in the following discussion with counsel:

> [The Court]: In the *Jackson* case[2], their description of the holding of the *Bane* case[3] is as follows: Voice identification evidence is independently sufficient to sustain a conviction.
>
> [Defense Counsel]: Again, I'm not disputing that, Your Honor, that there are cases supporting your position.
>
> [The Court]: I'm thinking that perhaps --yeah---
>
> [Defense Counsel]: ---I'm just saying that the jurors have been instructed already and that would be our suggestion, just to have them refer to the instructions.
>
> [The Court]: I think I have to address their point of law because I think it is a point that is not contained in the

---

[2] *Jackson v. State*, 758 N.E.2d 1030 (Ind. Ct. App. 2001).

[3] *Bane v. State*, 424 N.E.2d 1000 (Ind. 1981).

instructions. And sufficiency almost never is contained in the in the instructions and, in fact, sufficiency instructions have been disapproved. Both of you agree that no further argument is necessary.

[Defense Counsel]: That is true.

[The Court]: So what I'm thinking that I should do is state this statement, which is an accurate statement of the law, which is that voice identification evidence is independently sufficient to sustain a conviction and then to say the---repeat the instruction you're not to focus on any one instruction, but to look at all of the instructions together. All the other instruction then incorporate you to look at all of the evidence, you are to think about credibility, and things of that nature. So the particular instruction that I'm thinking of is the one that says you are to consider all of the instructions, both preliminary and final together. Do not single out any certain sentence or any individual point or instruction and ignore the others. After I say the answer to their question which is that voice identification evidence is independently sufficient to sustain a conviction.

[The State]: The State concurs.

[Defense Counsel]: We object to adding to the instructions.

[The Court]: Okay. I'm going to overrule the objection and instruct as indicated.… What's 13.01. Oh yes, we'll call that 13.01A. That's good. This is going to be an instruction that I gave them in response to their questions but it's not---. Give a copy to the attorneys so that they can see what it is that I'm proposing to do.

[The State]: The State has no objection.

[The Court]: And do you have an additional objection to what has already been stated?

[Defense Counsel]: No, Your Honor, but may I have this case cite to which you are referring?

[The Court]:         Yes.  I found four cases on the subject.  The leading case is *Bane B-a-n-e*, 424 N.E.2d, 1000.  That's again cited in *Evans versus State*, 542 N.E.2d, 546[4]---

[Defense Counsel]: ---that's sufficient.

[The Court]:         …  I think that this is an accurate statement of the law.  It answers their question.  It doesn't---and it's not covered by any other instruction.  I think I am obligated by the statute to provide a clarification on a point of law if requested by the jury and both parties have agreed that additional argument is not the appropriate way to do so.  And so I will send this back to the jury room and I probably should sign it in doing so and we should keep a copy of the signed instruction for the file.  Please make a copy and take the copy to the jury room.  Okay.  Thank you.

Trial Tr. pp. 317-21 (brackets added, emphases in original).  The trial court then answered the jury's question by submitting the following instruction to the jury:

Court's Instruction No. 13.01A

Voice identification evidence is independently sufficient to sustain a conviction.

You are to consider all the instructions both preliminary and final

---

[4]  *Evans v. State*, 542 N.E.2d 546 (Ind. 1989).

together.  Do not single out any certain sentence or any individual point or instruction and ignore the others.

PCR Ex. A.

[6] Following jury deliberations, "Freed was convicted as charged." *Freed*, 954 N.E.2d at 530.  "The trial court entered judgment of conviction only for Class B felony robbery." *Id*.

[7] Freed raised two issues on direct appeal: "(I) whether the trial court erred by admitting evidence of his unrelated burglary, forgery, and solicitation for murder, and (II) whether the evidence [was] sufficient to sustain his conviction for robbery." *Id*.  Upon review, we concluded that the trial court did not err by admitting reference to Freed's unrelated burglary, forgery, and solicitation for murder.  *Id*. at 532.  We also concluded that the evidence was sufficient to sustain Freed's robbery conviction.  *Id*.

[8] On January 19, 2012, Freed filed a *pro-se* PCR petition.  In this petition, Freed claimed that he suffered ineffective assistance of his appellate counsel.  Freed, by counsel, filed an amended petition on November 4, 2014.  Following an evidentiary hearing, the post-conviction court issued an order denying Freed's request for PCR on May 19, 2015.  This appeal follows.

# Discussion and Decision

[9] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999).  Instead, they create a

narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[10]  Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

# I. Ineffective Assistance of Appellate Counsel

[11]   The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[12]   The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the petitioner must show appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Overstreet v. State*, 877 N.E.2d 144, 165 (Ind. 2007) (citing *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)).

> First, an appellant must make a showing that the performance of his counsel was deficient. Second, the appellant must show adverse prejudice as a result of the deficient performance. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Again, this Court will presume that counsel is competent, and appellant must present strong and convincing evidence to rebut the presumption. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 763.

*Lowery v. State*, 640 N.E.2d 1031, 1048 (Ind. 1994).

Indiana courts recognize three basic categories of alleged ineffective representation by appellate counsel: (1) denying access to an appeal, (2) failing to raise an issue on appeal, and (3) failing to present an issue completely and effectively. *See Bieghler*, 690 N.E.2d at 193-95. Freed's allegation of ineffective assistance falls under the second category.

The Indiana Supreme Court has noted that the failure to raise an issue on direct appeal can be a formidable error because of the well-established rule that issues that were or could have been raised on direct appeal are not available for post-conviction review. *See Bieghler*, 690 N.E.2d at 193. Nevertheless, "'[i]neffectiveness is very rarely found in these cases.'" *Id.* (quoting Lissa Griffin, *The Right to Effective Assistance of Appellate Counsel*, 97 W. Va. L.Rev. 1, 25 (1994)) (brackets in original). One explanation for why ineffectiveness is rarely found in these types of cases is that the decision of what issues to raise on appeal is one of the most important strategic decisions to be made by appellate counsel. *Id.*

> "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). As Justice Jackson noted,
>
> > "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one....

> [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one."

> *Id*. at 752, 103 S.Ct. at 33133 (quoting Justice Robert H. Jackson, *Advocacy Before the United States Supreme Court*, 25 Temple L.Q. 115, 119 (1951)). Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable. *See Smith v. Murray*, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

*Id*. at 193-94.

[15]   The Indiana Supreme Court noted that "[i]n analyzing this sort of case, the Seventh Circuit, under its performance analysis, first looks to see whether the unraised issues were significant and obvious upon the face of the record." *Id*. at 194. "If so, that court then compares these unraised obvious issues to those raised by appellate counsel, finding deficient performance 'only when ignored issues are clearly stronger than those presented.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) (additional citations omitted). The Supreme Court also noted that when completing this analysis, "the reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Id*.

# A. Whether Freed's Counsel Provided Ineffective Assistance By Failing to Raise an Issue on Direct Appeal

[16] Freed alleges that his appellate counsel provided ineffective assistance by failing to argue on direct appeal that the trial court erred in answering the specific question posed by the jury during deliberations. In support of this allegation, Freed argues that the giving of the additional instruction after the jury began deliberating without rereading all of the previously given instructions constituted reversible error. Freed therefore claims that this issue was "clearly stronger" than the issues raised by counsel on direct appeal. Appellant's Br. p. 13.

[17] Indiana Code section 34-36-1-6 provides as follows: "[i]f, after the jury retires for deliberation: … (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or attorneys representing the parties." The general rule in these situations is that once deliberations commence, the trial court should not give any additional instructions to the jury. *Crowdus v. State*, 431 N.E.2d 796, 798 (Ind. 1982). This rule keeps the trial court "from giving any special emphasis, inadvertent or otherwise, to a particular issue in the case, and thus avoids the possibility that the additional instruction(s) may tell the jury what it ought to do concerning that issue." *Id*.

[18] However, the Indiana Supreme Court has identified one exception to the general rule, holding as follows:

When confronted with a question from a jury which has commenced deliberation, the challenge to the trial judge is to respond in a manner which accords with the legal requirements for final instructions and which is fair. The path is extremely hazardous for the court that would depart from the body of final instructions and do other than reread the final instructions in responding to jury questions. Such a departure will be warranted in only the most extreme circumstances. *Brannum v. State*, (1977) 267 Ind. 51, 366 N.E.2d 1180; *Cameron v. State*, (1979) Ind., 383 N.E.2d 1039. It must serve to amend the final instructions by adding a necessary one previously omitted or correcting an erroneous one, and must be fair to the parties in the sense that it should not reflect the judge's view of factual matters. *Hall v. State*, (1856) 8 Ind. 439. Thus, it is only when the jury question coincides with an error or legal lacuna[5] in the final instructions that a response other than rereading from the body of final instructions is permissible.

*Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind. 1981).

[19]  In support of his argument, Freed cites to *Graves v. State*, 714 N.E.2d 724 (Ind. Ct. App. 1999). In *Graves*, the defendant faced numerous charges, including robbery. 714 N.E.2d at 725. During deliberations, the jury sent the trial court a note asking "Did [Defendant] have to personally take the property to be guilty of robbery?" *Id*.

In response, the State suggested reading to the jury only an instruction on accomplice liability. Counsel for [Defendant], on the other hand, objected to providing the jury with any additional

---

5  A "lacuna" is "[a] missing part of something; a blank space; a gap." BLACK'S LAW DICTIONARY (10th ed.) p. 1006.

instructions. He further advised the court that if it chose to overrule his objection and provide the jury with additional instructions, he believed the proper procedure would be to re-read the entire set of final instructions, including any additional instructions. The court, over Graves' objection, read to the jury only an instruction on accomplice liability.

*Id*. at 725-26. Upon review, a panel of this court concluded as follows:

> Because of the existence of the legal lacuna in the form of the omitted instruction on accomplice liability, we conclude that the trial court properly provided the jury with the additional instruction. However, the trial court committed reversible error by failing to re-read the entire set of final instructions contemporaneously with the giving of the additional instruction. *See Durden v. State*, 406 N.E.2d 281 (Ind. Ct. App. 1980) (affirming trial court's action of reading supplemental instructions to jury in conjunction with re-reading of all instructions); *see also* [*Downs v. State*, 656 N.E.2d 849, 853 (Ind. Ct. App. 1995)] (where trial court provided additional instruction to jury and, by agreement of parties, did not re-read all instructions, Court of Appeals affirmed noting that "[t]he better procedure would have been for the trial court to reread all of the instructions at the same time the supplemental instruction was read to the jury, a procedure specifically waived by Downs").

*Id*. at 727.

[20] However, we disagree with our colleagues' broad conclusion that a trial court always commits reversible error by failing to reread the entire set of final instructions contemporaneously with the giving of the additional instruction because we find that conclusion to be unsupported by the relevant Indiana authority. Rather, our review indicates that while, under some circumstances,

such an approach might be found to be reversible error, under other circumstances, such an approach does not constitute reversible error. *See Riley v. State*, 711 N.E.2d 489, 492-93 (Ind. 1999) (acknowledging that while the generally accepted procedure in answering a jury's question on a matter of law is to reread all instructions in order to avoid emphasizing any particular point, departure from this procedure is permitted when the jury question coincides with a legal lacuna in the final instructions); *Downs*, 656 N.E.2d at 853 (noting that although the better approach would have been for the trial court to re-read all of the jury instructions when giving a supplemental instruction to fill in the gap left by a legal lacuna, based on the facts presented in that case, the trial court did not commit reversible error by failing to do so). Review of the record before us in the instant appeal convinces us that the trial court's actions below did not constitute reversible error.

[21] In the instant matter, within an hour of being sent to deliberate, the jury submitted the following question to the trial court: "As stated in closing argument for the Prosecutor or by the Prosecutor, is it a fact of law that voice recognition is sufficient testimony for a conviction?" Trial Tr. p. 314. Upon receiving the question, the trial court called the parties back to court and discussed how the trial court intended to respond to the jury's question. The trial court informed counsel that its research had "come up with four cases that indicate that the answer to that question would be yes." Trial Tr. p. 314. The trial court indicated that it felt it appropriate to clarify for the jury and recommended either: (1) to bring the jury back into the courtroom and allow

counsel the opportunity to discuss the relevant case law before the jury or (2) to send the jury's note back with the indication that "it is an accurate statement of the law." Trial Tr. p. 315.

[22] Counsel for both Freed and the State indicated that they did not feel additional argument was necessary. Freed's counsel suggested referring the jury back to the final jury instructions without answering the jury's question. Counsel for the State indicated that he believed that it was appropriate for the trial court to respond to the jury's question. The trial court indicated that it believed it was required to answer the jury's question because the jury's question involved a matter of law not covered by the other instructions.

[23] In determining how to respond to the jury's question, the trial court stated the following:

> So what I'm thinking that I should do is state this statement, which is an accurate statement of the law, which is that voice identification evidence is independently sufficient to sustain a conviction and then to say the---repeat the instruction you're not to focus on any one instruction, but to look at all of the instructions together. All the other instruction then incorporate you to look at all of the evidence, you are to think about credibility, and things of that nature. So the particular instruction that I'm thinking of is the one that says you are to consider all of the instructions, both preliminary and final together. Do not single out any certain sentence or any individual point or instruction and ignore the others. After I say the answer to their question which is that voice identification evidence is independently sufficient to sustain a conviction.

**\*\*\*\***

I think that this is an accurate statement of the law. It answers their question. It doesn't---and it's not covered by any other instruction. I think I am obligated by the statute to provide a clarification on a point of law if requested by the jury and both parties have agreed that additional argument is not the appropriate way to do so. And so I will send this back to the jury room and I probably should sign it in doing so and we should keep a copy of the signed instruction for the file. Please make a copy and take the copy to the jury room. Okay. Thank you.

Trial Tr. pp. 318, 320-21 (brackets added, emphases in original). The trial court then sent the following instruction to the jury:

Court's Instruction No. 13.01A

Voice identification evidence is independently sufficient to sustain a conviction.

You are to consider all the instructions both preliminary and final together. Do not single out any certain sentence or any individual point or instruction and ignore the others.

PCR Ex. A.

[24] The trial court's statements indicated that it believed that it was required to answer the jury's question to fill in the gap left by a legal lacuna. The trial court offered the parties the opportunity to present additional argument to the jury, but both parties indicated that they did not think additional argument was necessary. Further, although the trial court did not reread all of the jury instructions to the jury, in responding to the jury's question, the trial court did remind the jury that it was to consider all of the instructions together and that it

should not single out any certain sentence or any individual point or instruction.

[25] Review of the trial court's actions in this regard convinces us that the situation falls within the exception to the general rule that would require the trial court to reread all of the previously given jury instructions to the jury when answering the jury's question. As such, we conclude that the trial court could not have been found to have committed reversible error in this regard. In light of this conclusion, we cannot conclude that the proffered issue was "clearly stronger" than the issues raised by counsel on direct appeal.

[26] Further, during the evidentiary hearing on Freed's PCR petition, appellate counsel acknowledged that while he was familiar with case law indicating that the giving of an additional instruction to the jury during deliberations could be found to be reversible error, he was also familiar with case law indicating the opposite. Appellate counsel indicated that in deciding what issues to raise on direct appeal, he reviewed the record, considered the potential issues, and determined that the challenge to the admissibility of Freed's prior statements presented the strongest chance of success on appeal.

[27] Again, the decision of what claims to raise on appeal is one of the most important strategic decisions to be made by appellate counsel and, upon review, we will not second guess appellate counsel's strategic decision as to what claims to raise unless counsel's decisions in this regard were unquestionably unreasonable. *Bieghler*, 690 N.E.2d at 193-94. Given the conflicting relevant

authority, coupled with our determination that the trial court did not commit reversible error by answering the jury's question without rereading all of the previously given jury instructions, we conclude that Freed has failed to prove that his appellate counsel provided ineffective assistance in deciding to pursue other claims on direct appeal.[6]

[28] The judgment of the post-conviction court is affirmed.

Baker, J., and Pyle, J., concur.

---

[6] We also note that to the extent that Freed argues that his appellate counsel provided ineffective assistance by failing to challenge the giving of Instruction No. 13.01A because it contained an appellate standard, our review of the instruction reveals that the tendered instruction does not contain an appellate standard but rather an accurate statement of the law, which provided an answer to the specific legal question posed by the jury.