# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ADAM LENKOWSKY**
**TASHA ROBERTS**
Roberts & Bishop
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Dec 21 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PATRICK AUSTIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1112-CR-588 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome
Cause No. 20D03-1105-FA-8

**December 21, 2012**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Patrick Austin appeals his conviction of and sentence for two counts of possession of cocaine as Class A felonies.[1]  Austin argues:  the trial court erred by denying his motion for discharge under Criminal Rule 4; the trial court abused its discretion by admitting contested evidence; the trial court abused its discretion by rejecting his tendered jury instruction regarding constructive possession; and the sentence assigned by the trial court was both an abuse of discretion and inappropriate based on Austin's character and offenses.  We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 28, 2011, State trooper Joseph White stopped Austin on the Indiana Toll Road.  Austin was driving a semi-tractor and trailer, and Trooper White stopped Austin because he thought a trailer like Austin's would normally be pulled by a pickup truck and not a semi-tractor.[2]  When Trooper White inspected Austin's logbooks and shipping papers, he noted Austin had been off duty for the past seven days.  That made Trooper White suspicious, because he believed truck drivers do not make money if they are not working.  There were some errors in Austin's paperwork, and although Austin said he was headed for a trailer parts store in Elkhart, Austin did not know the name and address of the store.  Nor was Elkhart listed as a destination in Austin's logbooks.

Because of his suspicions, Trooper White called the El Paso Intelligence Center (EPIC) and learned Austin "had been involved in a bulk cash seizure" (Tr. at 17) in Michigan.[3]  Trooper White finished his inspection of Austin's records, then asked for

---

[1] Ind. Code § 35-48-4-1.
[2] The State does not argue it was illegal to use a semi-tractor to pull Austin's trailer.
[3] The record does not reflect Austin had been charged with any crime in connection with the seizure.

Austin's consent to search the truck. Austin declined and Trooper White told Austin he was free to go.

Trooper White contacted a state police detective, who asked Trooper Mick Dockery to go to the Toll Road and wait for Austin's vehicle. "Surveillance officers" (*id*. at 734) were following Austin and were in contact with Trooper Dockery. Trooper Dockery stopped Austin after he saw two traffic violations.[4] He obtained Austin's logbook and shipping documents, and noted Austin had not logged the prior stop by Trooper White; "therefore, his logbook was not current." (*Id*. at 739.) He characterized Austin as "nervous," (*id*.), and was concerned because a shipping document for a car Austin was hauling indicated the vehicle was not to be picked up until the following month. Austin's bill of lading was handwritten, and typically such forms from "businesses that are conducting legitimate business" will be typed. (*Id*. at 742,) Austin's truck had "a very high DOT number," (*id*.), which could indicate the trucking company was new or could indicate "it could be a company that has been in trouble before; and they switch names now, they are carrying a new DOT number." (*Id*. at 744.)

Trooper Dockery had a drug-sniffing dog with him, and the dog indicated it detected the odor of illegal drugs in Austin's trailer. There were two cars inside the trailer, a Mercedes and a Rolls-Royce, and the police obtained a warrant to search them. They found a number of vacuum-sealed "bricks" in both cars, some of which were tested and found to be

---

[4] He testified Austin did not "signal for a full 300 feet" before making a lane change, and was following the vehicle ahead of him by less than 300 feet, which was "too closely." (Tr. at 736.)

cocaine. Documents in the cars listed fictitious names for the owner of the Mercedes and the lessor of the Rolls-Royce. GPS data from the Rolls-Royce showed that car and Austin had been at the same hotel on a number of occasions and that the Rolls-Royce had been at Austin's residence in March of 2011.

The State charged Austin with two counts of Class A felony dealing in cocaine. On June 6, 2011, Austin asked for a speedy trial, so the seventy-day period during which the State was obliged to bring him to trial ended August 15, 2011. His case was set for trial August 8, but on July 27 the State moved to continue the trial due to court congestion. The trial court granted the motion and rescheduled Austin's trial to September 26. On August 17, Austin filed a motion for discharge, which the trial court denied.

The congestion on which the trial court premised its continuance from August 8 to September 26 was a trial for another incarcerated criminal defendant, Harmon, whose case was older than Austin's. Harmon had also asked for a speedy trial, but his request was made later than was Austin's.

Austin's trial commenced September 26, and he was found guilty of both Class A felony counts. He was sentenced to forty years on each count, to be served concurrently.

### DISCUSSION AND DECISION

1.  Speedy Trial

The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution. *Otte v. State*, 967 N.E.2d 540, 544-45 (Ind. Ct. App. 2012), *trans. denied*. Indiana Criminal Rule 4

4

implements the defendant's speedy trial right. *Id*. at 545. Rule 4(B)(1) provides:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

The Rule requires that, on a motion for a speedy trial, a defendant must be tried within seventy days unless the defendant caused the delay or the court's calendar is congested. *Otte*, 967 N.E.2d at 545. Austin asked for a speedy trial on June 6, 2011, and the seventy-day period ended August 15. Austin was not tried until September 26.

> Criminal Rule 4(D) provides:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

A trial court may grant the State a continuance when it is satisfied that (1) there is evidence for the State that cannot then be had; (2) reasonable effort has been made by the State to procure the evidence; and (3) there is just ground to believe that such evidence can be had within ninety days. *Otte*, 967 N.E.2d at 545. Any exigent circumstances may warrant a

5

reasonable delay beyond the limitations of Criminal Rule 4. *Id*. The reasonableness of such delay must be judged in the context of the particular case. *Id*.

In reviewing Criminal Rule 4 appeals, we review the trial court's legal conclusions *de novo* but exercise deference with respect to its factual findings. *Id*. A trial court's finding of congestion is presumed valid. *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009), *trans. denied*. A defendant challenging that finding must demonstrate that, at the time it was made, the finding was factually or legally inaccurate. *Id*. The trial court's explanations are accorded reasonable deference, and we will not grant relief unless a defendant establishes the finding of congestion was clearly erroneous. *Id*. The reasonableness of the trial court's finding of congestion is judged in the context of the particular circumstances of the case. *Id*.

When an incarcerated defendant asks for a speedy trial, Criminal Rule 4(B) requires "particularized priority treatment." *Clark v. State*, 659 N.E.2d 548, 551-52 (Ind. 1995). That means a meaningful trial date must be set within the time prescribed by the rule; if necessary, the trial must take priority over trial dates previously designated for civil cases and even criminal cases in which Criminal Rule 4 deadlines are not imminent. *Id*.

The court congestion on which the trial court premised its continuance from August 8 to September 26 was a trial for an incarcerated criminal defendant, Harmon, whose case was older than Austin's. The Harmon trial began August 8, a Monday, and lasted three days. Austin argues he could have been tried on August 15, the last day in the seventy-day period.

The trial court did not abuse its discretion in continuing Austin's trial. In *Gill v. State*, 267 Ind. 160, 368 N.E.2d 1159 (1977), the trial calendar was full when Gill made his early

6

trial motion, and the court could accommodate no further settings. Gill contended that calendar did not show "congestion" within the meaning of that term in the rule, because it was made up of a mixture of civil and criminal settings. Gill noted civil settings must give way to criminal settings as required by our speedy trial rule.

In *Gill*, as in the case before us, there was congestion because "the continuance of civil cases set for trial during the seventy day period would not necessarily have accommodated the trial of [Gill's] case." *Id*. at 165, 368 N.E.2d at 1162. The continuance of civil matters would not guarantee a courtroom and jury for Gill's trial, so "it was not necessary for the trial judge to set off previously scheduled civil matters at the time of his ruling on February 2, in response to the motion for early trial." *Id*.

Nor would the continuance of a civil trial have accommodated Austin's trial on the 15th. At a hearing on his motion for discharge, Austin told the trial court "[o]n August 15th Mr. Austin could have been tried in this courtroom. That is the basis for the motion for discharge." (Tr. at 235.) The trial court responded that there was a contested child custody and support hearing scheduled that day and it took place that day. No jury had been called to hear a jury trial the week of the August 15, and the court was not prepared to hear a jury trial. The State noted it could not subpoena witnesses, some of whom were out-of-state, on such short notice. The trial court did not err in denying Austin's motion for discharge.

2.    Admission of Evidence

The admission or exclusion of evidence rests within the sound discretion of the trial court, and we review for an abuse of discretion. *Conley v. State*, 972 N.E.2d 864, 871 (Ind.

2012), *reh'g denied*. An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before it, *id.*, and the decision will not be disturbed absent a requisite showing of abuse. *Id.*

We review *de novo* a ruling on the constitutionality of a search or seizure. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008). However, we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Id.* Thus, we do not reweigh evidence, but consider conflicting evidence most favorably to the trial court's ruling. *Id.*

Austin appears to argue the cocaine seized from him should not have been admitted because police should not have stopped him a second time after they released him from the initial stop. Article I, Section 11 of the Indiana constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Id.* at 340. In resolving challenges asserting a Section 11 violation, courts must consider the circumstances presented in each case to determine whether the police behavior was reasonable. *Id.* The burden is on the State to show that under the totality of the circumstances its intrusion was reasonable. *Id.* Thus, we must determine whether Austin's detention in order to conduct a dog sniff of his truck was reasonable under the totality of the

8

circumstances.

The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis on which the officer selected the subject of the search or seizure. *Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006). Our determination of the reasonableness of a search or seizure under Section 11 often turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.*

We cannot find error in the trial court's determination the stop and search was reasonable. Trooper Dockery saw Austin commit two traffic violations. He knew about the irregularities in Austin's paperwork Trooper White had noted, and he noted some additional irregularities in Austin's logbooks and bills of lading. The traffic stop was not unduly prolonged before the officers established probable cause to seek a warrant; the police dog that indicated the presence of drugs was with Trooper Dockery at the time of the stop. *Cf. Quirk*, 842 N.E.2d at 339 (search improper when, after first stop, police stopped Quirk a second time at an interstate rest area and told him that although he was free to leave, his truck would have to remain, and drug-sniffing dog did not arrive for twenty minutes). We cannot find Austin's second stop unreasonable.

Austin next argues the trial court should not have admitted evidence he had control over the Rolls-Royce on several occasions before he was arrested, because the admission of that evidence violated Ind. Evidence Rule 404(b). That rule provides in part: "Evidence of

9

other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In deciding whether to admit Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Freed v. State*, 954 N.E.2d 526, 530 (Ind. Ct. App. 2011). Rule 403 provides in part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The trial court is afforded wide latitude in weighing probative value against prejudice under Rule 403. *Freed*, 954 N.E.2d at 531. We will reverse the court's evaluation and decision to admit or exclude only on a showing of an abuse of discretion. *Id.*

Austin does not explicitly argue the evidence was irrelevant or prejudicial. Instead, he points to and distinguishes *United States v. Lazcano-Villalobos*, 175 F.3d 838 (10th Cir. 1999). Lazcano-Villalobos had a prior arrest for possession of marijuana. When he was arrested he was driving a vehicle registered to him and altered with secret compartments in the rear bumper. The government wanted to introduce evidence of the arrest and guilty plea to show his knowledge of concealed compartments for the purpose of transporting controlled substances. The Tenth Circuit found evidence concerning his prior arrest "implicates his

knowledge of the hidden compartment in the instant case because it shows he previously owned a car in which he concealed contraband in a hidden compartment." *Id.* at 846. Because the government offered the Rule 404(b) evidence for the proper purpose of showing Lazcano-Villalobos' knowledge of the contraband and the evidence was relevant to show such knowledge, the district court did not abuse its discretion in allowing its admission. *Id.*

Austin argues *Lazcano-Villalobos* is distinguishable because the evidence he had prior possession of the Rolls-Royce indicated only that he stored, used, or transported it on prior occasions. "What was missing was the link to his knowledge of the secret compartment[5] or the cocaine inside of the vehicle on previous occasions." (Br. of Appellant at 18.) There need not be any such link.

The State argues the challenged evidence was relevant to show Austin's control over the vehicle, which control would be "a factor establishing constructive possession." (Br. of Appellee at 22.) Austin offers no authority to support his apparent premise that to be relevant for Rule 404(b) purposes, a specific piece of evidence must have a tendency to make the existence of *more than one* fact more or less probable than it would be without the evidence, and we decline to so hold. The challenged evidence had at least minimal relevance to the question of Austin's control of the Rolls-Royce, and it was not inadmissible just because it did not further tend to prove some additional fact, *i.e.*, his knowledge there was a secret compartment with cocaine inside. We cannot find an abuse of discretion in the admission of

_____

[5] According to Austin's statement of the facts, the only vehicle with a secret compartment containing cocaine was the Mercedes, not the Rolls-Royce.

11

evidence Austin had used, stored, or transported the Rolls-Royce in the past.

3. Jury Instruction

The manner in which a trial court instructs a jury is largely within its sound discretion, and we review a decision regarding instructions only for an abuse of that discretion. *Washington v. State*, 973 N.E.2d 91, 93 (Ind. Ct. App. 2012). When reviewing a decision not to give a defendant's tendered jury instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Id*.

Police found cocaine in a secret compartment in the Mercedes, and in a suitcase in the trunk of the Rolls-Royce. Austin did not have a key to the trunk. He asked the court to instruct the jury that:

> While possession of cocaine found in a secret compartment of an automobile trailer may be imputed to a truck driver hauling the automobiles under the theory of constructive possession where the driver's possession is not exclusive, there must be proof of additional circumstances pointing to his knowledge of the drugs and their presence in the automobiles. Being the driver of a truck carrying automobiles where drugs are found is not enough to support the inference that the Defendant maintained dominion and control over the drugs.
> Constructive possession will support a possession conviction if the State shows that the Defendant had both the capability and the intent to maintain dominion and control over the drugs.
> Where a person's control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband.

(App. at 143.)

12

The trial court instead instructed the jury that possession may be actual or constructive, and that a person who is not in actual possession but "knowingly has both the power and the intention at any time to exercise control over a thing . . . is then in constructive possession of it." (Tr. at 1619.) It also instructed the jury that "Knowledge or intent may be inferred from the facts and circumstances proved in each case." (App. at 144.)

Austin is correct that in hidden compartment cases, knowledge may not be inferred solely from the defendant's control of the vehicle in which the contraband is hidden. To establish intent, additional evidence is required that demonstrates guilty knowledge. *Whitney v. State*, 726 N.E.2d 823, 826 (Ind. Ct. App. 2000). Austin's jury was not instructed that his knowledge could be inferred solely from his control of the vehicle.

Instead, the jury was instructed that constructive possession could be found only if Austin "knowingly has both the power and the intention at any time to exercise control over a thing," (Tr. at 1619), and the only "thing" whose constructive possession was at issue was the cocaine. As the trial court's instruction could not have permitted the jury to find the "mere presence" of drugs was enough to show Austin's constructive possession, the jury was not, as Austin asserts, "left to speculate that his control over the Rolls-Royce and Mercedes Benz made him guilty." (Reply Br. of Appellant at 7.) We cannot find an abuse of discretion in the jury instructions.

4.    Sentencing

A person who commits a Class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code §

13

35-50-2-4. Austin was convicted of two Class A felonies and sentenced to forty years for each count, to be served concurrently.

Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). A trial court may impose any sentence within the allowable range for a given crime without a requirement to identify specific aggravating or mitigating circumstances. *Id.* The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence. *Id.* The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion. *Id.* The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse. *Id.*

Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B), *i.e.*, the sentence is "inappropriate in light of the nature of the offense and the character of the offender." *Id.* Our review is focused on the aggregate sentence, not whether the sentence is consecutive or concurrent, the number of counts, or the length of the sentence on any individual count. *Id.* at 1225.

The sentencing court found as aggravators that Austin had been convicted of armed robbery in 1987; had been arrested twice on firearms charges, but not convicted; had about ninety pounds of cocaine in his possession when he was arrested; and had been stopped in Michigan in 2009 with over a million dollars in cash in his possession. It acknowledged Austin's "laudable" employment history, (App. at 163), and that his conviction would cause

14

his family financial hardship.

Austin first argues the trial court improperly relied on facts that had not been proven, specifically the amount of money involved in the bulk cash seizure in 2009 and the amount of cocaine police seized. As those facts were included in the presentence report and Austin admitted the presentence report was correct, we find no error.

In *Davis v. State*, 892 N.E.2d 156 (Ind. Ct. App. 2008), Davis claimed her presentence investigation report should not have been used because it included a probation officer's hearsay testimony. We first noted the rules of evidence, other than those regarding privilege, do not apply to sentencing hearings. *Id*. at 164 (citing Ind. Evidence Rule 101(c)(2)). We next noted Indiana law requires the trial court to use presentence reports in its sentencing consideration. *Id*. (citing Ind. Code § 35-38-1-8(a)). Davis had said the only statement in the report with which she did not agree was that of a probation officer who said Davis showed little remorse, but Davis did not subpoena the probation officer to appear at the sentencing hearing or conduct any other discovery. We found the trial court did not err in admitting the report at the sentencing hearing. *Id*. at 164.

Austin told the sentencing court he had reviewed the presentence report and it was accurate. The information in the report supported the aggravators the trial court found. Austin's sentence was not an abuse of discretion on that ground.

Nor can we find Austin's sentence inappropriate. Our authority to revise an otherwise proper criminal sentence is governed by Ind. Appellate Rule 7(B): "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the

15

Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of a criminal sentence, an appellate court has the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010).

When determining whether a sentence is inappropriate, we recognize the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Peters v. State*, 959 N.E.2d 347, 356 (Ind. Ct. App. 2011). We must examine both the nature of the offense and the defendant's character. *Id*. When conducting this inquiry, we may look to any factors appearing in the record. *Id*.

Austin was caught transporting cocaine worth over four million dollars. He had a prior felony conviction and two firearms-related arrests, and had previously been found with one million dollars in cash, which police seized. We cannot find his sentence inappropriate.

We accordingly affirm Austin's convictions and sentence.

Affirmed.

NAJAM, J., and KIRSCH, J., concur.