

FILED
Jul 09 2020, 8:32 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Vanderpool Law Firm
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jamie R. Webb,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 9, 2020

Court of Appeals Case No.
19A-CR-2424

Appeal from the Wabash Circuit
Court

The Honorable Robert R.
McCallen III

Trial Court Cause No.
85C01-1903-F4-347

**May, Judge.**

[1] Jamie R. Webb challenges her conviction of and twenty-year sentence for Level 4 felony burglary.[1] Webb argues that the trial court abused its discretion by declining to admit an affidavit containing Webb's hearsay statement to the arresting officer and that her sentence is inappropriate given the nature of her offense and her character. We affirm.

## Facts and Procedural History

[2] In December 2017, Candace Coe and Samuel Velacquez took over ownership and operation of Dreama's Restaurant in Wabash, Indiana. Velacquez's duties included managing the back-kitchen area and serving as the cook, while Coe took charge of the wait staff and handled payroll. Webb and her mother, Freda Patton, were both employees at Dreama's from November 2016 to February 2019.

[3] In addition to running the restaurant together, Coe and Velacquez were romantically involved and shared a rented residence. In late December 2018, the two ended their relationship and Velacquez moved to Ohio. Velacquez took with him his personal belongings, which included only some clothing. The household items and electronics he and Coe acquired during their relationship belonged to Coe. Coe was left as the sole operator of the restaurant.

---

[1] Ind. Code § 35-43-2-1(1).

[4]     A month later, Coe's restaurant venture took a turn for the worse, and finally on February 19, 2019, Coe was forced to permanently shut down Dreama's due to an inability to pay her employees. The next day, Coe told Patton that Coe could not afford to pay her or Webb approximately one month's worth of back wages. Based on Coe's recommendation, Webb filed a "labor claim" for "payment of wages" which totaled $3,885.75. (Tr. Vol. II at 131.)

[5]     On the night of February 24, 2019, Webb and Patton recruited seventy-year-old Eugene Grimm to take them from Webb's apartment to Coe's residence in Grimm's truck. Grimm testified he was not initially aware why Webb and Patton wanted to go to Coe's house that night, and he testified he had provided Webb and Patton transportation on other occasions because they did not own a car. After Grimm dropped Webb and Patton off at Coe's house, he sat in his truck and observed the pair examining the backdoor, entering, and then carrying out furniture, TV's, and other household items, which they placed in the back of Grimm's truck. Grimm noted the pair did not make any effort to conceal themselves or their actions. From there Grimm drove Webb and Patton back to Webb's apartment, where Webb and Patton unloaded the items and placed them inside Webb's apartment.

[6]     During this time, Coe was away from her home visiting her sister in Kendallville, Indiana. On February 26, 2019, Coe was informed by one of her friends that Webb and Patton had taken some items from her house. She immediately returned to file a police complaint with Officer Drew Bender, and on February 27, 2019, police officers obtained a search warrant for Webb's

apartment. No one answered when officers arrived at Webb's apartment, so they kicked down the front door. An investigation of the residence revealed numerous items that belonged to Coe: two televisions, a DVD player, fifty DVDs, pictures, a jewelry box, a heater, a PlayStation 4, a mirror, some shelves, and a microwave. Some of the electronics were plugged into the wall for use when officers arrived.

[7] On March 8, 2019, the State charged Webb with Level 5 felony burglary,[2] Level 4 felony burglary, and Class A misdemeanor theft.[3] On March 21, 2019, the State additionally alleged Webb was a habitual offender.[4] During trial on August 21, 2019, Webb asserted her right not to testify but attempted to enter into evidence an affidavit from Officer Bender containing statements she had made to him during the search of her apartment. In that affidavit, Officer Bender noted Webb had indicated she had authorization from Velacquez to enter into Coe's home and take certain property as compensation for her lost wages.

[8] As part of her offer to prove, Webb argued she satisfied Evidence Rule (804)(a)'s unavailability criteria by "exercising her constitutional right not to testify against herself." (*Id*. at 162.) The State, however, disagreed by asserting that unavailability is afforded only toward privileges such as "attorney-client

---

[2] Ind. Code § 35-43-2-1.

[3] Ind. Code § 35-43-4-2(a).

[4] Ind. Code § 35-50-2-8.

privilege, doctor-patient privilege, pastor-parishioner privilege" and not from "exercising your Fifth Amendment right." (*Id.* at 163.) Webb further explained that she was entitled to present her statement from the affidavit regarding consent under the hearsay exception for statements against interest as set forth in Evidence Rule 804(b)(3) because the statement was inculpatory and exculpatory – she admitted she "was there, but [she] had permission." (*Id.*) The court decided that, because the statement was not entirely against Webb's interest and because she would not be available for cross-examination, admission of the statement was not permissible under Evidence Rule 804(b)(3).

[9] Webb additionally requested an instruction about the defense of consent. The trial court indicated it would not issue the instruction because Webb had not presented admissible evidence of consent, but the court allowed Webb to argue why the instruction should be included. The trial court ultimately did not allow Webb to call Officer Bender to testify about her statement during the search, and it did not provide the jury an instruction on the defense of consent, as the inadmissible hearsay statements offered by Webb were the only documented evidence toward that defense.

[10] A jury found Webb guilty of Level 4 felony burglary and Class A misdemeanor theft. After a bifurcated hearing, the jury also determined Webb was a habitual offender. Following a sentencing hearing on September 16, 2019, the trial court convicted Webb of only Level 4 felony burglary, based on double jeopardy concerns. It imposed a ten-year sentence for Level 4 felony burglary and added

a ten-year enhancement because Webb was a habitual offender, resulting in an aggregate twenty-year sentence with two years suspended to probation.

# Discussion and Decision

## 1. Admission of Evidence

[11] The trial court's ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion. *Cherry v. State*, 57 N.E.3d 867, 875 (Ind. Ct. App. 2016), *trans. denied*. An abuse of discretion occurs if the trial court misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it. *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014), *trans. denied*. When presented with an out-of-court statement offered to corroborate the truth of the matter asserted, the trial court must first examine the statement for hearsay, which is generally inadmissible, and then evaluate whether an exception permits its admission. *Camm v. State*, 908 N.E.2d 215, 226 (Ind. 2009).

[12] Hearsay is a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted. Ind. Evid. Rule 801(c). Unless hearsay falls into one of a number of delineated exceptions, it is inadmissible at trial. Evid. Rule 802. Webb argues the evidence she wished to have admitted was admissible under Indiana Evidence Rule 804, which provides in relevant part that hearsay is admissible if: (1) the declarant is unavailable as a witness, Evid. Rule 804(a);

and (2) the statement was made against the declarant's interest. Evid. Rule 804(b)(3).

[13] At issue is the statement found in an affidavit by Officer Bender wherein he averred Webb told him that she had permission to take the items in exchange for her lost wages. Webb argues the affidavit containing her hearsay is admissible pursuant to Evidence Rule 804 because: (1) she was unavailable to testify as a witness on her behalf; and (2) the statement she made to Officer Bender was a statement against her interest. We address each part of the exception separately.

## A. Whether Webb was Unavailable as a Witness

[14] Indiana Evidence Rule 804(a) outlines five classifications of unavailable witnesses:

> (a) **Criteria for Being Unavailable**. A declarant is considered to be unavailable as a witness if the declarant:

> > (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;

> > (2) refuses to testify about the subject matter despite a court order to do so;

> > (3) testifies to not remembering the subject matter;

(4)    cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or

(5)    is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

> (A)    the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (5); or

> (B)    the declarant's attendance or testimony, in the case of a hearsay exception under rule 804(b)(2), (3), or (4).

But this subdivision (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

[15]    The State argues Webb cannot both claim unavailability to introduce a statement she made to officers and, at the same time, exercise her right against self-incrimination to avoid being cross-examined about the statement. However, despite the State's objection, Webb's declaration of her Fifth Amendment constitutional right against self-incrimination is a valid and protected privilege that does meet the criteria for unavailability. *See Camm*, 908 N.E.2d at 233 (a witness' unavailability at defendant's second trial was grounded in his Fifth Amendment privilege against self-incrimination); *and see Kellems v. State*, 651 N.E.2d 326, 328 (Ind. Ct. App. 1995) (depositions from two witnesses who were declared unavailable after invoking their Fifth Amendment

privilege against self-incrimination were admissible as evidence under the hearsay exception rule).

### B. Whether Webb's Statement was Against Her Interest

[16] Evidence Rule 804(b) outlines several exceptions to the rule against hearsay that are available if the declarant is unavailable to testify as a witness. The exception on which Webb relies provides:

> *Statement Against Interest.* A statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability.

Evid. Rule 804(b)(3). Statements against interest are admissible because they tend to expose the declarant to criminal liability, and thus a reasonable person in the declarant's position would not have made the statements if she did not believe them to be true. *Tolliver v. State*, 922 N.E.2d 1272, 1280 (Ind. Ct. App. 2010).

[17] Webb argues the trial court abused its discretion when it did not admit Officer Bender's affidavit statement, which provided:

> Webb told me that she had just filed claim against Coe for $3,889.75 for back wages. Webb told me that she used to work for Coe at Dreama's Restaurant in Wabash. Webb told me that the items weren't stolen, but that they were given to her as lost wages. Webb told me that [Velacquez] gave her permission to go into the house to retrieve the items. Webb could not tell me

> where the house was, but told me that it was [Coe] and
> [Velacquez]'s house and that she had been there before. Webb
> told me they went into the backdoor of Coe's house, which was
> unlocked. Webb told me they didn't break in.

(App. Vo1. II at 22.) Other than her attempt to have Officer Bender's affidavit admitted, Webb presented no additional evidence at trial to support her assertion that she had permission to take the items from Coe's house.

[18] A statement against interest must be incriminating on its face to be admissible under the hearsay exception. *Jervis v. State*, 679 N.E.2d 875, 878 (Ind. 1997). Further, it is not enough that a statement "merely arouse some suspicion as to culpability in the factual context of the case." *Id*. If taken at its word, Webb's statement is more exculpatory than inculpatory because it provides a complete defense for her actions. Thus, at most, Webb was able to demonstrate only that her statement is both exculpatory and inculpatory in nature, which is insufficient to merit the application of Evidence Rule 804(b)(3). *See State ex rel. Langdon Hosp., Inc. v. Indem. Co.*, 211 N.E.2d 322, 38 Ind. App. 492, 494 (1965) ("to be admissible the statement against interest should be inconsistent with the defense, or it should tend to establish or disprove a material fact").

[19] We agree with the State that "Webb is attempting to have her cake and eat it too," (Br. of Appellee at 10), because her supposed statement against interest balances farther towards purely exculpatory rather than evenly exculpatory and inculpatory, and because she wishes to introduce an unsubstantiated hearsay claim without allowing the State a fair opportunity to cross-examine her about

her claim of consent. Thus, we hold the trial court did not abuse its discretion when it denied Webb's request to admit Officer Bender's affidavit containing Webb's claim of consent. *See Tolliver v. State*, 922 N.E.2d 1272, 1281 (Ind. Ct. App. 2010) (hearsay statements were not considered as statements against interest when they were not "incriminating on their face and [did] not implicate [defendant] in a crime"), *trans. denied*.

## 2. Inappropriateness of Sentence

[20] We will reverse a sentence as inappropriate only if we determine Webb's sentence is inappropriate in light of the nature of the offense committed and Webb's character. *See* Ind. Appellate Rule 7(B) (allowing appellate review of sentences based on defendant's character and nature of the offense). The nature of offense portion of the analysis compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008), while the character of the offender portion of the analysis permits a broader consideration of a defendant's character. *Douglas v. State,* 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

[21] Ultimately, our determination of appropriateness "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224. The task at hand is not to evaluate whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *Barker v. State,* 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans.*

*denied.* The defendant ultimately bears the burden of demonstrating the inappropriateness of the sentence. *Patterson v. State,* 909 N.E.2d 1058, 1063 (Ind. Ct. App. 2009).

[22] When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). The minimum sentence for a Level 4 felony burglary is two years and the maximum sentence is twelve years, with a six-year advisory sentence. Ind. Code § 35-50-2-5.5. Additionally, a person found to be a habitual offender may receive a sentence enhancement between six and twenty years. Ind. Code § 35-50-2-8. In all, Webb could have received a maximum thirty-two-year sentence, but she was sentenced only to twenty years, with two of those years suspended to probation.

[23] Webb argues she committed the offense in an attempt to right a seeming injustice because Coe did not pay her for her work. However, the items Webb stole indicate her motivation was geared more toward exacting revenge than to correcting an injustice. This is exemplified through a cursory appraisal of the items she took from Coe's home, under the guise of a need to pay her monthly rent. Although Webb did take electronics that could have significant monetary value, such as two televisions, a PlayStation 4, and a microwave, she also took items of personal, sentimental value that would have inconsequential monetary value, such as pictures, a mirror, some shelves, and a small jewelry box. In addition, the search of Webb's apartment revealed that the televisions, PlayStation 4, and microwave were actually in use, which suggests Webb did

not intend to sell Coe's property to pay her rent. Most telling is that Webb had an appropriate legal remedy that she could have pursued to recover her lost wages, and she in fact did file a claim for unpaid wages. Webb's actions demonstrate not a desperate need for immediate payment, but rather a continuing bitterness toward Coe. As Webb's actions were clearly retaliatory in nature, we do not see her sentence as inappropriate.

[24] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The pre-sentence investigation report (PSI) elucidated Webb's long criminal history, which began with three counts of theft as a juvenile, for which she received probation. As an adult, between 1996 and the present day, Webb was convicted of four felonies and five misdemeanors, including neglect of a dependent resulting in serious bodily injury, battery, forgery, assisting a criminal, receiving stolen property, illegal possession of alcohol, and two counts of possession of marijuana. At the time of sentencing, Webb had four additional criminal charges pending against her, which include Class A misdemeanor driving while suspended,[5] Class A misdemeanor knowingly driving while suspended with a prior conviction within ten years,[6] Class C

---

[5] Ind. Code § 9-24-19-2(1)(2).

[6] Ind. Code § 9-24-19-2.

misdemeanor possession of paraphernalia,[7] and Level 6 felony neglect of a dependent.[8]

[25] Although the extent to which a defendant's criminal history may be used to judge the appropriateness of a sentence "varies based on the gravity, nature, and number of prior offenses in relation to the current offense," having committed multiple crimes is a "poor reflection on the defendant's character, [as] it may reveal that he or she has not been deterred even after having been subjected to the police authority of the State." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). Webb's failure to be deterred is further demonstrated by the fact that the State has filed four separate petitions to revoke probation and her probations were terminated unsuccessfully on three occasions. Webb's prior convictions for theft and forgery, in conjunction with three unsuccessful attempts at probation, do not suggest Webb will amend her behavior following the criminal conduct in this current case. *See Sainvil v. State*, 51 N.E.3d 337, 344 (Ind. Ct. App. 2016) (defendant's sentence was not inappropriate given his poor character, the similarity of his prior convictions to the present offense, and his two failed attempts to maintain satisfactory probation). Further, we concur with the trial court's assessment that Webb had "absolutely no remorse whatsoever, despite the evidence of guilt being overwhelming," (Tr. Vol. II at 211), which also speaks poorly of her character. *See Davis v. State*, 892 N.E.2d 156, 165 (Ind. Ct. App. 2008) (defendant's eight-year sentence for a Class C

---

[7] Ind. Code § 35-48-4-8.3(b)(1).

[8] Ind. Code § 35-46-1-4.

felony was not found to be inappropriate given that her crimes were of "dishonesty and moral turpitude" and the defendant demonstrated a complete lack of remorse).

[26] Webb attempts to analogize the facts in her case with those in *Frye v. State*, 837 N.E.2d 1012 (Ind. 2005), and *Hollin v. State*, 877 N.E.2d 462 (Ind. 2007), to justify a reduction of her sentence. In *Frye*, the defendant was convicted of felony burglary, felony theft, and misdemeanor false informing, and his sentence was enhanced based on his habitual offender status. *Frye*, 837 N.E.2d at 1012. Our Indiana Supreme Court reduced Frye's sentence from forty years to twenty-five years based on the remoteness of Frye's previous violent offenses and the fact that his current offenses were non-violent and alcohol related. *Id*. at 1014.

[27] In *Hollin*, the eighteen-year-old defendant was charged with Class B felony conspiracy to commit burglary and adjudicated a habitual offender after a jury trial. The trial court found his criminal history an aggravating factor and considered his young age as a mitigating factor. Following review, his sentence was reduced from forty years to twenty years by our Indiana Supreme Court. 877 N.E.2d at 463. The Court explained that Hollin received the maximum penalty of twenty years for his Class B felony conviction, even though the advisory sentence for the offense was ten years. Given that Hollin's crime was non-violent, he was unarmed, no one was home at the time of the burglary, and his prior crimes were related to auto theft, the Court determined the nature of his current offense merited reduction of his sentence. *Id*. at 465.

[28] The facts in *Frye* and *Hollin* are distinguishable from the case before us. Webb had a Level 6 felony charge pending against her at the time of her sentencing, as well as pending charges involving unlawful driving activity and possession of drug paraphernalia. Finally, both Frye and Hollin initially received significantly lengthier sentences than Webb, such that even following appellate reduction, both of their sentences remained longer than Webb's sentence.

[29] Webb's continued inclination toward criminal behavior, as exemplified by her inability to successfully finish her probation on three occasions and her current pending criminal charges, does not shed a positive light on her character or demonstrate a willingness to change her behavior. Further, the deliberate and personal nature of Webb's offense demonstrates retaliation towards Coe, rather than an action committed out of serious financial necessity. Under these circumstances, we see nothing inappropriate about her twenty-year sentence. *See Bayes v. State*, 466 N.E.2d 447, 449-450 (Ind. 1984) (defendant's sentence was not inappropriate given the vengeful and premeditated nature of the offense and the defendant's criminal history which included five instances of probation).

# Conclusion

[30] Although Webb could be classified as an unavailable witness by invoking her Fifth Amendment privilege, the hearsay statement she wished to have admitted was not against her interest and thus was not admissible under Evidence Rule 804. Thus, the trial court did not abuse its discretion when it excluded that

evidence. Webb's sentence is not inappropriate given the vengeful nature of her offense and her continuing propensity toward criminal behavior. Accordingly, we affirm the judgment of the trial court.

[31]    Affirmed.

Robb, J., and Vaidik, J., concur.